# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| **MELVIN BRANHAM,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 3:15-cv-00083 |
| ) | REEVES/POPLIN |
| **MICHAEL DONAHUE, Warden,** ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Melvin Branham ("Petitioner"), an inmate at the Northeast Correctional Complex,[1] brings this pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 [Doc. 1]. Respondent filed a response in opposition thereto [Doc. 8], as well as a copy of the state record [Doc. 7]. Petitioner has not filed a reply to Respondent's response, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1. For the reasons set forth below, the Court determines that no evidentiary hearing is warranted in this case, Petitioner's § 2254 petition [Doc. 1] will be **DENIED**, and this action will be **DISMISSED**.

## I.  PROCEDURAL HISTORY

On July 18, 2012, Petitioner entered a guilty plea to a reduced charge of robbery in exchange for a fifteen-year sentence in the Sevier County Circuit Court. [Doc. 7-1 p. 48]. As a condition of the plea agreement, Petitioner agreed to be sentenced as a career offender with a sixty percent release eligibility date [Doc. 7-2 p. 69]. Although Petitioner was permitted to remain on

---

[1] The Clerk is **DIRECTED** to update the docket with Petitioner's current address at the Northeast Correctional Complex, 5249 Highway 67 West, P.O. Box 5000, Mountain City, TN 37683.

bond for thirty days before beginning his sentence, the trial court subsequently revoked Petitioner's bond based upon his admitted drug use [Doc. 7-4 p. 30–31].

Petitioner then filed a motion to withdraw his guilty plea and to set bond [Doc. 7-1 p. 52], which the trial court denied following a hearing [Doc. 7-5 p. 14–16]. Petitioner appealed this denial, challenging the revocation of his bond, and claiming it constituted a "manifest injustice" for which his guilty plea may be withdrawn because he was never informed that any drug use would violate the terms of his plea agreement [Doc. 7-6 p. 15–27]. However, the Tennessee Court of Criminal Appeals ("TCCA") stated that Petitioner had failed to follow the proper procedure for an appeal, and held that no manifest injustice existed, as Petitioner had knowingly and voluntarily entered his guilty plea, and that his drug use violated the conditions of his bond, rather than his plea agreement. *State v. Branham*, No. E2013-00638-CCA-R3-CD, 2014 WL 869552, at *6–7 (Tenn. Crim. App. Mar. 4, 2014) ("*Branham I*"), *perm. app. denied* (Tenn. Sept. 24, 2014). The Tennessee Supreme Court ("TSC") then denied Petitioner's application for permission to appeal [Doc. 7-11 p. 1].

On April 21, 2014, Petitioner filed a petition for post-conviction relief, claiming that he received ineffective assistance of counsel and that counsel did not properly advise him of the terms of his plea agreement [Doc. 7-12 p. 4–13]. After the TSC rejected his Rule 11 application, Petitioner filed an amended petition for post-conviction relief [*Id.* at 26–30]. The post-conviction court denied Petitioner's amended petition [*Id.* at 32–34], and the TCCA affirmed this denial. *Branham v. State*, No. E2016-00157-CCA-R3-PC, 2016 WL 3923633, at *1 (Tenn. Crim. App. July 15, 2016) ("*Branham II*"), *no perm. app. filed*.

Petitioner first filed a § 2254 petition on December 10, 2014, while his state post-conviction proceeding was ongoing [*See* Doc. 3]. The petition was docketed and opened as *Branham v. State of Tennessee*, No. 3:14-cv-580 [*Id.*]. However, because the petition was insufficient in certain respects, the Court entered an order directing Petitioner to file a new petition [*Id.*]. After Petitioner complied with the Court's order and returned a completed petition, the returned petition was inadvertently opened as a new case, *Branham v. Donahue*, No. 3:15-cv-83 [*Id.* at 2]. This Court dismissed without prejudice the first habeas case, *Branham v. State of Tennessee*, No. 3:14-cv-580, and directed Respondent to respond to the petition in the present case, *Branham v. Donahue*, No. 3:15-cv-83 [*Id.* at 2–3].

## II. BACKGROUND

The following factual background is taken from the TCCA's opinion on Petitioner's appeal of the denial of his petition for post-conviction relief:

> At the post-conviction hearing, the Petitioner testified that according to the Tennessee Department of Correction, his sentence was fifteen years at 60% service. He had no previous convictions. He said that he stopped the trial and pleaded guilty "due to the lack thereof of the representation through the outcome of the trial" by counsel. The Petitioner agreed that during the guilty plea hearing, the trial judge asked if the Petitioner was pleased with counsel's representation and that the Petitioner said he was pleased because of the plea agreement.
>
> The Petitioner testified that he and counsel had two telephone conversations regarding his case, that they met at counsel's office two days before the trial, and that a court hearing was held the day after their meeting. The Petitioner said that although counsel had the State's discovery materials, counsel did not review them with him. The Petitioner said that he asked counsel to hire an investigator and a forensic expert to interpret the blood spatter but that counsel refused because counsel did not believe the trial court would grant a request for funds. The Petitioner said that he provided counsel a list of witnesses during one of their telephone conversations but that counsel told the Petitioner that counsel did not interview them.

3

The Petitioner testified that about one week before the trial, the State's plea offer was for especially aggravated robbery as a Range I offender but that the State offered to lower the charge two hours after the trial began. He said that counsel showed him a chart reflecting the possible sentences and that the State offered eight years for aggravated robbery. The Petitioner said that counsel and the prosecutor spoke again during a recess and that the State offered fifteen years for robbery at 60% service. The Petitioner said counsel explained that the Petitioner would be released from prison faster with a robbery conviction than if he pleaded guilty to aggravated robbery, a crime of violence, and that the Petitioner would serve no more than four years. The Petitioner said he did not understand the range system and learned after entering prison that he could serve his entire fifteen-year sentence. The Petitioner said counsel did not explain that the service requirement was a release eligibility date, not a parole date. The Petitioner said he did not receive a notice of sentence enhancement from the prosecutor.

The Petitioner testified that he accepted the plea agreement because he felt "backed into a corner" and that the offer was better than being convicted of a Class A felony. He said that he was not satisfied with counsel's representation but that everything occurred quickly.

The Petitioner testified that based upon his discussion with counsel, he understood the terms of the plea agreement but that he did not realize counsel's stating he would be paroled in four years was wrong. The Petitioner said that he did not ask questions at the guilty plea hearing because he did not have questions regarding his sentencing range at that time. He said that the terms of the plea agreement included his remaining on bond, that he obtained an ankle monitor from a probation officer, and that his bond was ultimately revoked.

The Petitioner testified that he wanted to withdraw his guilty plea because he did not understand counsel's advice regarding the service requirement but that counsel told him the best argument to support withdrawing the plea was the State did not honor the "thirty-day plea agreement." The Petitioner said counsel never argued that the Petitioner did not understand the terms of the plea agreement. Relative to the appeal of the motion to withdraw, the Petitioner said that counsel stated he would file an appeal and that the Petitioner's family retained counsel for the appeal.

The Petitioner testified relative to his appeal that he wrote counsel letters and that counsel responded, although he and counsel had differing opinions about which issue to raise. The Petitioner said that he wanted counsel to appeal the trial court's denial of the Petitioner's motion to withdraw his guilty plea and to argue that the Petitioner was unaware of the "full implications" of the plea agreement. The Petitioner said counsel believed that the proper argument was the State failed to honor the thirty-day commitment and that the Petitioner's drug use was not a proper ground to revoke bond. The Petitioner said he and counsel did not discuss the conditions of his bond.

The Petitioner testified that after this court released its opinion, counsel attempted to be relieved as counsel but that counsel's motion was denied. The Petitioner said that counsel agreed to appeal the case to the supreme court but that counsel appeared exhausted with the case. The Petitioner believed that counsel could have done more work on his case before the trial began, that counsel did less work because he was not paid in advance, and that after the Petitioner's family retained counsel for the appeal, the Petitioner began receiving documents and appellate briefs. The Petitioner said that he told counsel he acted in self-defense, that counsel did not raise self-defense at the trial, and that counsel had no defense strategy. The Petitioner said the lack of money prevented the use of experts and investigators.

On cross-examination, the Petitioner testified that he received the discovery materials from a previous attorney, not counsel. The Petitioner said that he identified the Petitioner's former girlfriend as a potential trial witness and agreed the girlfriend was a State's witness, although she did not testify. The Petitioner said the girlfriend would have testified that he came to her home after the incident, that he was distraught, and that he told her he was involved in an altercation with another man. The Petitioner said he also identified his mother as a potential trial witness. He recalled that he borrowed money from his mother about one and one-half hours after the incident and said that if he had robbed the victim, he would not have needed to borrow money from his mother. The Petitioner said he told counsel this information.

After reviewing the transcript of the guilty plea hearing, the Petitioner testified that his career offender status was discussed but that he was unsure if he understood it. He agreed that he did not ask questions about his offender status and that the trial court advised him of his constitutional rights. The Petitioner agreed that his release eligibility date was discussed and that the prosecutor stated the Petitioner was required to serve 60% of his sentence. He admitted he did not ask the trial judge questions about the substance of his guilty plea agreement. After reviewing his written plea agreement, he said it reflected a career offender status requiring 60% service of his fifteen-year sentence and his signature. The Petitioner agreed the plea agreement and transcript did not state he would be released from confinement after serving four years.

After reviewing the transcript of the motion to withdraw his guilty plea, the Petitioner testified that counsel did not mention the Petitioner's career offender status, the lack of witnesses presented at the trial, or the Petitioner's release after four years. The Petitioner agreed he did not ask questions at the motion hearing.

The Petitioner testified that counsel raised an issue on appeal related to the Petitioner's failure to understand he was prohibited from using drugs while on bond after entering his guilty plea. The Petitioner said counsel never argued a manifest injustice existed justifying withdraw of his guilty plea. The Petitioner admitted he knew consuming marijuana was illegal while he was on bond.

Counsel testified that he and the Petitioner reviewed the State's discovery materials twice, which included police reports, photographs of the victim's injuries, and the Petitioner's girlfriend's statement to the police. Counsel noted that he was not the Petitioner's original attorney and said that the Petitioner was knowledgeable about the discovery before counsel's appointment. Counsel said he and the Petitioner discussed trial strategy and the theory of the case. Counsel said his theory was that the Petitioner and the victim were involved in a "drug deal gone bad," that a fight ensued, and that during the fight, the victim was accidently stabbed in the neck.

Counsel testified that the Petitioner did not provide a list of witnesses, although they discussed the Petitioner's girlfriend, and that counsel concluded she was an unfavorable witness for the defense. Counsel did not recall discussing any additional potential witnesses. After reviewing the terms of the plea agreement, counsel said the Petitioner agreed to plead guilty to robbery as a career offender with a fifteen-year sentence at 60% service. He said that he and the Petitioner reviewed the terms of the plea offer and that although the Petitioner was not a career offender, the agreement increased the offender classification in exchange for reducing the charge from a Class A to a Class C felony. Counsel considered the reduction in felony classification a benefit because Class A felonies included mandatory sentences.

Counsel testified that he and the Petitioner discussed the release eligibility date and the percentage of the sentence the Petitioner would serve before becoming eligible for release. Counsel recalled telling the Petitioner that release was not guaranteed once the Petitioner served the required percentage. Counsel said that he did not tell the Petitioner that he would be released after serving four years and that he did not recall telling the Petitioner he would be released after serving any specified amount of time. Counsel said he and the Petitioner probably had a general discussion about the benefit of good-time credit in obtaining parole. Counsel said that after their discussion, he was comfortable proceeding with the guilty plea hearing and believed the Petitioner was knowingly and voluntarily pleading guilty. Counsel said that although he wanted the Petitioner to continue with the trial, the plea offer was beneficial. Counsel noted that the Petitioner's failure to appear charge was dismissed pursuant to the agreement.

Counsel testified that he was prepared for the trial and that the strategy was to cross-examine the State's witnesses aggressively. Counsel said that the Petitioner did not request a forensic expert or an investigator but that they discussed having no need for a forensic expert or an investigator because the drug deal and altercation occurred inside a car. Counsel determined based upon the facts of the case that no investigation could have revealed how the victim was stabbed in the neck during a fight inside a car.

Counsel testified that based upon his reading of this court's opinion in the Petitioner's case, he believed the appeal of the bond revocation should have been appealed when the bond conditions were imposed, rather than waiting until after the trial.

On cross-examination, counsel testified that the trial began about one year after he was appointed to the Petitioner's case and that he recalled meeting with the Petitioner twice, although they could have met more. Counsel said that before the Petitioner's case, he had worked on two or three major felony cases and that the cases resulted in plea agreements. He recalled previously representing two clients charged with robbery.

Counsel testified that he determined early during his representation the Petitioner's girlfriend was an adverse witness, although counsel did not interview her. Counsel said he was familiar with the procedure for obtaining funds to hire investigators and expert witnesses. He denied telling the Petitioner that the Petitioner would have to pay for an investigator and a forensic expert and telling the Petitioner that the trial court would deny a request for funds. Counsel said it was possible he told the Petitioner that the court might deny a request for funds based upon the facts of the case.

Counsel testified that although he did not recall a sentence enhancement notice in the discovery materials, he thought he received one. He said that after the State's first trial witness testified, the prosecutor approached counsel with the plea offer during a short recess. He recalled that the offer expired at the end of the recess and that he and the Petitioner discussed the offer for approximately fifteen to thirty minutes. Counsel said that the Petitioner did not immediately accept the offer, that the Petitioner was concerned about the amount of time he would serve, that they "talked through it," and that the Petitioner accepted the offer. Counsel said they discussed the benefit of lowering the charge to a Class C felony but increasing the offender classification and the potential for appellate relief if the Petitioner chose to proceed with the trial and was convicted. Counsel said that when the Petitioner entered his guilty plea, the Petitioner showed no hesitancy.

Counsel testified that pursuant to the plea agreement, the Petitioner's bond was continued for thirty days and that counsel argued at the bond revocation hearing the State had violated the plea agreement by attempting to have the Petitioner's bond revoked. Counsel agreed that he questioned the probation officer at the hearing about whether refraining from using drugs was a condition of the Petitioner's bond and that counsel argued no order was entered after the guilty plea hearing stating that the Petitioner was prohibited from using drugs. Counsel said that although the original bond order entered before the trial prohibited the Petitioner from using drugs, counsel argued that the original order expired when the Petitioner entered his guilty plea. Counsel said he did not believe the trial court or the parties mentioned the Petitioner's remaining on the conditions of his original bond. Counsel said he attempted to highlight that revoking the Petitioner's bond before the thirty days expired was moot because the Petitioner had already been sentenced and would spend years in prison.

Counsel testified that at the hearing on the motion to withdraw the Petitioner's guilty plea, counsel argued the State breached a material aspect of the plea agreement by revoking the Petitioner's bond and that the bond should not have been revoked. Counsel said he researched the manifest injustice standard for withdrawing a guilty plea and reviewed another attorney's research.

Counsel testified that he understood he was obligated as appointed counsel to appeal the Petitioner's case and that the appeal focused on the motion to withdraw the Petitioner's guilty plea based upon the evidence presented at the bond revocation hearing. Counsel said he researched the matter extensively but noted little case law existed at the time of the appeal. Counsel said he also discussed the case with another attorney. Counsel said that he thought he sought an appeal pursuant to the proper appellate procedural rule but that this court disagreed. Counsel said he sought appellate relief as a matter of right, rather than pursuant to the bond revocation rule. Counsel said that he never accepted payment from the Petitioner relative to the appeal and that any money the Petitioner paid was related to an escape charge. Counsel said that he and the Petitioner discussed what issues to raise on appeal and that he did not recall the Petitioner's stating he did not understand the terms of the plea agreement.

On redirect examination, counsel testified that the Petitioner did not indicate he decided to plead guilty because the Petitioner believed counsel was "bombing the trial" or was an "utter disaster as his lawyer."

The post-conviction court denied relief. The court determined that the guilty plea transcripts and forms showed that at a recess during the trial, the Petitioner and counsel discussed the various service requirements regarding sentencing. The court found that the Petitioner was fully advised of his rights, that the Petitioner had an opportunity to ask the trial court questions, and that the Petitioner told the trial court that he understood all of his rights and the terms of the plea agreement. The post-

conviction court noted that the Petitioner did not ask questions relative to the agreement or to sentencing.

The post-conviction court found that counsel was the second or third attorney who represented the Petitioner and that counsel received previous counsel's file and the State's discovery materials. The court found that counsel investigated the Petitioner's girlfriend, who was the sole witness proposed by the Petitioner, and determined that she was an unfavorable witness. Relative to the bond revocation, the court found that counsel raised the issue on appeal. The court found that the Petitioner understood the plea agreement, the consequences of entering his guilty plea, and the sentencing range. The court determined that the Petitioner had not presented evidence that a manifest injustice had occurred requiring withdrawal of the plea.

The post-conviction court found that counsel perfected an appeal and raised the appropriate issues. The court found that although counsel sought appellate relief pursuant to Tennessee Rule of Appellate Procedure 3, this court addressed the issues of whether the Petitioner's guilty plea was knowing and voluntary and whether the trial court erred by revoking the Petitioner's bond.

The post-conviction court determined that the Petitioner failed to prove by clear and convincing evidence that he received the ineffective assistance of counsel. The court determined that counsel properly advised the Petitioner and that the Petitioner's decision to enter his guilty plea was based upon advice from counsel and the trial court. This appeal followed.

*Branham II*, 2016 WL 3923633, at *1–6.

### III. STANDARD OF REVIEW

The Court must review Petitioner's request for habeas corpus relief pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows state prisoners to seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254; *Reed v. Farley*, 512 U.S. 339, 347 (1994).

For any claims that have been adjudicated on the merits by the state court, however, federal courts must utilize a "highly deferential" standard of review. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 88–89 (2011). Under the AEDPA, a court considering a habeas claim must defer to any

decision by a state court concerning the claim, unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the merits." *Greene v. Fisher*, 565 U.S. 34, 40 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (defining clearly established federal law as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision"). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state-court decision unreasonably applies clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

The standards set forth in the AEDPA are "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)); *see also Harrington*, 562 U.S. at 102 ("If [§ 2254(d)] is difficult to meet, that is because it was meant to be."). Further, where findings of fact are supported by the record, they are entitled to a presumption of correctness which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Ultimately, the AEDPA's highly deferential standard requires this Court to

give the rulings of the state courts "the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

**IV. ANALYSIS**

Petitioner sets forth the following claims for relief in his habeas petition:

1. Trial counsel provided ineffective assistance of counsel by failing to advise Petitioner of the full consequences of pleading guilty, specifically that Petitioner would receive a fifteen-year sentence to serve at sixty percent release eligibility; and

2. Petitioner's sentence was illegal because he did not properly qualify as a career offender.

[Doc. 1 p. 5–6]. The Court will address each claim applying the above standards.

**A. Claim 1**

Petitioner claims that trial counsel was ineffective in failing to explain the nature of Petitioner's plea agreement, specifically that he would receive a fifteen-year sentence to serve at sixty (60) percent release eligibility [Doc. 1 p. 5]. However, Respondent argues that this claim is procedurally defaulted due to Petitioner's failure to raise this claim of ineffective assistance of counsel in his appeal of the denial of his petition for post-conviction relief [Doc. 8 p. 19].

A federal district court generally cannot entertain a petition for writ of habeas corpus unless a petitioner has first exhausted all available state court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). Once the petitioner's federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).[2] Conversely, a petitioner who

---

[2] In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; *see also Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (noting that Rule 39 clearly removed Tennessee Supreme Court review as an antecedent for habeas review).

11

fails to raise his federal claim in the state courts and who is now barred by a state procedural rule from returning with the claim to those courts has committed a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A procedural default forecloses federal habeas review, unless a petitioner can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation, *id.* at 732, or where the petitioner demonstrates that he has "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

In his appeal of the denial of his petition for post-conviction relief, Petitioner raised numerous claims of ineffective assistance of his trial counsel, summarized by the TCCA to include: "[T]hat counsel failed to meet sufficiently with the Petitioner to prepare for the trial, failed to investigate adequately potential witnesses identified by the Petitioner, failed to obtain an investigator and forensic expert, and did not pursue the appeal properly, which effectively barred any form of appellate relief." *Branham II*, 2016 WL 9323633, at *6. However, Petitioner failed to present to the TCCA his claim of ineffective assistance of counsel due to the failure to properly advise Petitioner of his plea agreement [Doc. 7-16]. Therefore, Respondent correctly states that this claim is procedurally defaulted due to the "one petition" limitation of Tennessee Code Annotated § 40–30–102(c) [Doc. 8 p. 19–20].

If a § 2254 petitioner failed to raise a claim on appeal and thereby violated a state procedural rule, "that claim is subject to procedural default and will not be reviewed by federal courts unless the petitioner demonstrates cause and prejudice for the default." *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015). Because Petitioner is barred from returning to the state courts on this claim, it is procedurally defaulted and is not reviewable on habeas unless Petitioner can

show cause to excuse his failure to comply with the state procedural rules, as well as actual prejudice.

Petitioner claims that he did not exhaust his state remedies on this ineffective assistance of counsel claim because counsel would not raise this ground on appeal [Doc. 1 p. 5]. Ordinarily, "attorney error in state post-conviction proceedings 'cannot constitute cause to excuse [a] default in federal habeas'" because there is no constitutional right to an attorney in those proceedings. *West*, 790 F.3d at 697 (quoting *Coleman*, 501 U.S. at 757). However, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court established a narrow exception to the *Coleman* rule, holding that:

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17; *see also Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (extending the *Martinez* exception to states whose procedural requirements make it "virtually impossible" to present an ineffective assistance claim on direct appeal, even if no outright prohibition exists). The Sixth Circuit subsequently held that the *Martinez-Trevino* exception is applicable in Tennessee because Tennessee's procedural framework directs defendants to file ineffective assistance claims in post-conviction proceedings, rather than on direct appeal. *Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014).

However, a petitioner cannot use the ineffective assistance of counsel at the post-conviction *appellate* stage to excuse a procedural default, because it is not an initial-review collateral proceeding. *Wallace v. Sexton*, 570 F. App'x 443, 453 (6th Cir. 2014). The *Martinez* Court explicitly held that the narrow exception it carved out "does not extend to attorney errors in any

13

proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 16 (stating *Coleman* "held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true *except* as to initial-review collateral proceedings for claims of ineffective assistance of counsel at *trial*"). Specifically, the *Martinez* exception does not apply to claims that were raised at the post-conviction initial-review proceeding but not preserved on post-conviction appeal. *See, e.g.*, *West v. Carpenter*, 790 F.3d 693, 698–99 (6th Cir. 2015) (holding that "attorney error at state post-conviction appellate proceedings cannot excuse procedural default under the *Martinez-Trevino* framework").

As set forth above, although Petitioner raised this claim to the post-conviction trial court, he did not properly raise it in his appeal of the denial of his post-conviction petition. Due to this failure, his claim of ineffective assistance of counsel due to counsel's failure to properly advise Petitioner of his plea agreement is procedurally defaulted. Additionally, Petitioner cannot establish cause, as the *Martinez* exception does not apply to excuse Petitioner's default. *See Wallace*, 570 F. App'x at 453. Accordingly, because this claim has been procedurally defaulted, and Petitioner cannot establish cause, Petitioner is not entitled to habeas relief on this ground.

### B. Claim 2

Petitioner also claims that he received an illegal sentence because of his designation as a career criminal, even though Petitioner had not committed any prior felonies [Doc. 1 p. 6]. Respondent asserts that Petitioner has not exhausted his state remedies with respect to this claim, and, further, that it is not cognizable in a federal habeas petition [Doc. 8 p. 21].

Petitioner alleges that he is entitled to habeas relief because his sentence improperly exceeded the sentencing guidelines, as he should not have qualified as a career offender [Doc. 1 p. 6]. The guideline for career offender classification is set forth in Tennessee Code Annotated § 40-35-108. However, the interpretation of state statutes lies within the exclusive purview of state courts. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Where state courts have spoken on a matter of state law, it is not the role of a federal habeas court "to reexamine state-court determinations of state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991). Therefore, a decision, which rests entirely on state law, generally is not of federal concern. *See, e.g.*, *Swarthout v. Cooke*, 562 U.S. 216, 218 (2011) (holding claims which allege a state law error or an incorrect application of state law do not present cognizable issues for federal habeas review).

Specifically, an allegation that a sentence has been imposed in violation of state sentencing law does not present a constitutional issue, unless the petitioner can demonstrate that the sentence was unconstitutional. *See, e.g.*, *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A State court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (assertion that sentences were aggregated under state law causing an illegal total sentence is not a cognizable habeas corpus claim); *Lindsey v. Parker*, No. 2:10-CV-193, 2013 WL 3834005, at *3 (E.D. Tenn. July 23, 2013) (holding that petitioner's claim that he was improperly sentenced as a Range II offender based on a prior invalid conviction did not provide a "recognizable basis for habeas corpus relief").

In the present case, Petitioner claims that he was improperly sentenced as a career offender [Doc. 1 p. 6]. As stated above, claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence was unconstitutional or wholly unauthorized by law. *See Howard*, 76 F. App'x at 53. In *Apprendi v. New Jersey*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). The Supreme Court later clarified that the statutory maximum "for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303–04 (2004).

However, Petitioner agreed to be sentenced as a career offender, as well as pled guilty to a fifteen-year sentence as a condition of his plea agreement [Docs. 7-1; 7-2]. Consequently, "[t]hese cases [*Blakely* and *Washington*] simply have no application where the defendant entered into a plea agreement with a stipulated sentence, and where the trial judge made no factual findings in the sentencing context and instead simply imposed the sentence to which the parties had agreed." *White v. Johnson*, No. 3:14-cv-01281, 2014 WL 4805049, at *16 (M.D. Tenn. Sept. 26, 2014) (addressing a claim of ineffective assistance of counsel for failing to object to a sentence that exceeded the maximum in the applicable range). Therefore, Petitioner's claim that he received an illegal sentence is not cognizable in a federal habeas corpus petition, and Petitioner is not entitled to habeas relief on this claim.

## V. CONCLUSION

For the reasons set forth above, the Court finds that none of Petitioner's claims warrant issuance of a writ. Therefore, Petitioner's petition for a writ of habeas corpus [Doc. 1] will be **DENIED** and this action will be **DISMISSED**.

## VI. CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a COA, should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to any claims. Specifically, as to Petitioner's first claim, jurists of reason would not debate the Court's finding that Petitioner's claim of ineffective assistance of counsel is procedurally defaulted. Further, as to Petitioner's second claim, jurists of reason would not debate the Court's finding that Petitioner's claim is not cognizable in a federal habeas petition. Accordingly, a COA **SHALL NOT ISSUE**.

**AN APPROPRIATE ORDER WILL ENTER.**

_____
**UNITED STATES DISTRICT JUDGE**